Rel: May 9, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2024-0441
_____

**JB Accounting Services, LLC; JB Accounting Tax Service Check Cashing, LLC; JB Accounting Tax Services, LLC; and Jennifer Beverly**

**v.**

**Brittany Winters, Adonijah Dale-Winters, and Ashley Hughes**

**Appeal from Mobile Circuit Court**
**(CV-23-900402)**

SC-2024-0441

PER CURIAM.

AFFIRMED.  NO OPINION.

See Rule 53(a)(1) and (a)(2)(F), Ala. R. App. P.

Stewart, C.J., and Wise, Bryan, Sellers, Mendheim, Cook, and McCool, JJ., concur.

Mitchell, J., dissents, with opinion, which Shaw, J., joins.

2

MITCHELL, Justice (dissenting).

Brittany Winters, Adonijah Dale-Winters, and Ashley Hughes ("the tax preparers") contracted with JB Accounting Tax Services, LLC ("JB Accounting"), to provide tax-preparation services. Those contracts stated that the tax preparers would not be paid for their work if they quit or were fired before the end of the contract term. They were all eventually fired and allegedly not paid for most of their work. They sued for breach of contract.

After a bench trial, the Mobile Circuit Court entered a judgment that denied the tax preparers' breach-of-contract claims because, in the court's view, they were not owed any payments after they were fired. It based this conclusion on the tax preparers' own testimony, in which they said that they understood the contracts in this way. Even so, the court exercised its discretion to award the tax preparers damages based on quantum meruit.

The circuit court erred in doing so. Our precedent is clear that, when an express contract governs the parties' relationship, quantum meruit is not an available remedy. I would accordingly reverse the

judgment below. Because the majority holds otherwise, I respectfully dissent.

## Facts and Procedural History

The tax preparers agreed to provide tax-preparation services for JB Accounting during the 2022-2023 tax season. Each of the tax preparers signed identical contracts, which read, in relevant part:

> "The independent contractor shall not disclose any information relating to [JB Accounting] TO ANYONE OUTSIDE THE COMPANY. Upon separation from [JB Accounting], independent contractors shall surrender all information and properties belonging to [JB Accounting]. [JB Accounting] reserves the right to let go of any independent contractor when and deemed right, NO ONE SHOULD TAKE ANY CLIENT FOLDERS OUT THE OFFICE FOR NO REASON! YOU WILL BE LET GO IF CAUGHT! NO EXECPTION! IF YOU QUIT, GET LET GO, YOU WILL NOT GET PAID FOR THE PEOPLE YOU PUT IN. This is a job so you need to treat it like a job. NO LATENESS, NO TARDIES, AND YOU MUST TAKE CARE OF YOU CLIENT. LEAVE RACTCHETNESS AT HOME MUST BE PROFESSIONAL WHEN YOU STEP IN THE DOOR! MUST COME TO WORK IN UNIFORM AND READY TO WORK.

> "The independent contractor should understand that the employment with [JB Accounting] is a temporary one that spans around IRS Tax Refund period (January-April) and payment shall be on a commission-based pay scale and the amount earned shall be on form 1099. That is the IRS form 1099 for tax filing the pay scale is as follow: 30% of the tax preparation fee MIGHT GO up if u initiative 25 e filed tax return AND SHOW GOOD PERFORANCE AND TAKE GOOD CARE OF YOUR CLIENT!"

4

"IF YOU AGREE WITH THIS AGREEMENT SIGN AND DATE BELOW!"

(Emphasis, capitalization, and errors in original.)

During the tax season, the tax preparers allegedly completed hundreds of returns: Winters (276), Dale-Winters (222), and Hughes (113). But they were apparently paid for only a fraction of them: Winters (about 50), Dale-Winters (fewer than 20), and Hughes (4). All were eventually fired.

The tax preparers filed a complaint in March 2023 against JB Accounting; JB Accounting Tax Service Check Cashing, LLC; JB Accounting Services, LLC; Jennifer Beverly; Debra Richardson; and Jadasha Bowman James ("the defendants"). The complaint listed claims of (1) breach of contract, (2) fraud, (3) conversion, and (4) civil conspiracy. In their motion for summary judgment, the tax preparers argued that each client they served had paid JB Accounting $3,500 and that, under the contracts, the tax preparers were owed 30% of those payments. According to the tax preparers, they were collectively owed hundreds of thousands of dollars. Yet, they say, they were severely underpaid: Winters had received only $18,900, Dale-Winters $55,210.50, and Hughes a mere $4,200.

The circuit court conducted a bench trial. At trial, the tax preparers each testified as to (1) how many returns they had completed, (2) how much they had been paid and what they were allegedly owed, and (3) their understanding of the contracts. The tax preparers called no other witnesses, and the defendants did not present any evidence or testimony.

At the end of the trial, the circuit court dismissed the tax preparers' civil-conspiracy and fraud claims, leaving only the breach-of-contract and conversion claims. It also dismissed defendants Richardson and James, leaving defendants JB Accounting; JB Accounting Tax Service Check Cashing, LLC; JB Accounting Services, LLC; and Jennifer Beverly ("Beverly and the businesses").

The circuit court later entered a judgment in favor of the tax preparers. While the court denied the tax preparers' breach-of-contract claims, it granted them relief based on quantum meruit. The circuit court invoked its discretion under Rule 54(c), Ala. R. Civ. P., to grant this relief. Its judgment reads, in relevant part:

> "Upon consideration of the testimony and evidence presented at trial, the Court finds the following: (1) that [the tax preparers] cannot recover against [Beverly and the businesses] on the contract claim because the [tax preparers]

each testified that they understood that the contract[s] barred recovery if they were terminated prior to being paid for their work, (2) that a quantum meruit claim was tried by implied consent of the parties, and (3) that the [tax preparers] are entitled to a judgment against [Beverly and the businesses] on the quantum meruit claim."

Beverly and the businesses now appeal that judgment to our Court.

Analysis

Our precedent is clear that, when an express contract governs the parties' relationship, quantum meruit is not an available remedy. Here, the circuit court found that such contracts existed. And because the tax preparers did not challenge the validity of those contracts at trial or on appeal, the contracts' terms control. The circuit court's judgment based on quantum meruit is thus due to be reversed.

A. Quantum Meruit

Ordinarily, when someone knowingly accepts services from another person and retains a benefit resulting from those services, the law "'implies a promise'" for the beneficiary to pay the "'reasonable value'" of the services rendered. Mantiply v. Mantiply, 951 So. 2d 638, 656 (Ala. 2006) (quoting Hendrix, Mohr & Yardley, Inc. v. City of Daphne, 359 So. 2d 792, 795 (Ala. 1978)). If the beneficiary fails to honor this implied

promise to pay, the service provider may pursue a quantum meruit claim to recover the "reasonable value" of his services. Id.

But that rule has an exception: "'[w]hen an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails.'" Mantiply, 951 So. 2d at 656 (quoting Brannan & Guy, P.C. v. City of Montgomery, 828 So. 2d 914, 921 (Ala. 2002)); see also Vardaman v. Florence City Bd. of Educ., 544 So. 2d 962, 965 (Ala. 1989) (plurality opinion) ("It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter."). A quantum meruit claim is therefore unavailable when the parties have an express contract. See Lemoine Co. of Alabama v. HLH Constructors, Inc., 62 So. 3d 1020, 1028 (Ala. 2010) (rejecting quantum meruit argument based on existence of a express contract and noting that a quantum meruit recovery would render one of the contract's provisions "meaningless"); Restatement (Third) of Restitution and Unjust Enrichment, Part II, Ch. 4, Topic 2, Intro. Note § 2 (Am. L. Inst. 2011) (summarizing judicial authorities for the proposition that "enrichment derived from a valid consensual exchange is neither unjust nor unjustified"). For that reason, a court

should not override that contract by replacing it with a judicially created implied contract. See Homes of Legend, Inc. v. McCollough, 776 So. 2d 741, 746 (Ala. 2000) ("Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract."); cf. John Hancock Mut. Life Ins. Co. v. Schroder, 235 Ala. 655, 659, 180 So. 327, 330 (1938) ("We are not permitted, under the guise of construction, to make new contracts for the parties, nor to add to the terms of a contract words, terms, or conditions not contained in it.").

The circuit court's ruling that the parties were bound by enforceable, express contracts foreclosed it from entering a judgment based on quantum meruit. Each of the contracts provide: "IF YOU QUIT, GET LET GO, YOU WILL NOT GET PAID FOR THE PEOPLE YOU PUT IN." According to its judgment, the circuit court found that the "[tax preparers] cannot recover against [Beverly and the businesses] on the contract claim because the [tax preparers] each testified that they understood that the contract[s] barred recovery if they were terminated prior to being paid for their work." Accordingly, the circuit court held that (1) the contracts were valid and (2) the tax preparers, by their own

admissions, could not recover under them. And because the circuit court determined that there were enforceable, express contracts, it could not enter a judgment based on quantum meruit. See Mantiply, 951 So. 2d at 656; Vardaman, 544 So. 2d at 965.

### B. Failure to Present Arguments

Unfortunately for the tax preparers, at no point did they challenge the contracts' validity. While they initially pleaded fraud in their complaint, the tax preparers provided no facts at trial to support that claim, and the circuit court dismissed it. Had the tax preparers successfully challenged the validity of the contracts, they may have been able to recover based on quantum meruit. See, e.g., Mantiply, 951 So. 2d at 656 (holding that, because a purported contract lacked an identifiable measure of compensation, it was unenforceable and thus did not preclude a quantum meruit claim). Absent such a challenge during trial, however, recovery under quantum meruit was not possible.

This legal conclusion does not mean that I personally approve of the contracts. But what I think the parties should have argued is irrelevant, because it is well established that our Court "will not 'reverse a [circuit] court's judgment based on arguments not presented to [it].'" Avis Rent

<u>A Car Sys., Inc. v. Heilman</u>, 876 So. 2d 1111, 1124 (Ala. 2003) (citation omitted).  This rule serves several functions, but one is to ensure that defendants have adequate notice.  <u>See</u> <u>Penney v. Carden</u>, 356 So. 2d 1188, 1192 (Ala. 1978).  Here, Beverly and the businesses did not have notice that the tax preparers were challenging the contracts' validity because no challenge was made.  Indeed, the circuit court determined that they were valid based on the tax preparers' own understanding of the contracts.  And that is why the circuit court could not grant quantum meruit relief by exercising its discretion: to award relief not pleaded by the plaintiff, the defendant must have some form of notice and an opportunity to defend himself.  <u>See</u> Rule 54(c), Ala. R. Civ. P.; <u>Penney</u>, 356 So. 2d at 1192.  Here, there was no notice that the contracts were challenged, let alone notice of quantum meruit claims that presume those contracts are invalid.

Conclusion

Because the circuit court held that there were enforceable, express contracts between the parties, it was required to enforce those contracts and could not issue an award based on quantum meruit.  For that reason, I would reverse the judgment below.  I respectfully dissent.

11

Shaw, J., concurs.